**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Vito Antonio Laera,

    Plaintiff

    v.

Cai Jun Fang,

    Defendant

Case No.: 2:14-cv-667-JAD-NJK

**Order Denying Without Prejudice Plaintiff's Amended Motion for Entry of Default Judgment [Doc. 19]**

    This breach-of-contract action stems from *pro se* plaintiff Vito Antonio Laera's allegedly longstanding business relationship with Cai Jun Fang, who performed business services for Laera in China. Laera moves for a default judgment against Fang on all claims. Doc. 19. Although Laera satisfies the majority of the *Eitel* factors, his damages request is founded on speculation. I thus deny his motion without prejudice to Laera's filing of another motion with greater proof of damages.

**Background**

    Laera alleges that between 2002 and 2014 Fang was tasked with performing China-based business services including "sourcing, managerial services, office manager, translator and general business." Doc. 1 at 2. In the course of his employment, Fang hired staff members and Laera rented office space and an apartment "that was required to house employees while conducting business in the area." *Id.* at 2-3. On April 7, 2014, Laera discovered that Fang may have been engaged in wrongdoing, investigated the allegations with vendors, manufacturers, and employees," and concluded that Fang had "added an average of 8% to the cost of the goods and or services." *Id.* at 3. Since Laera imported approximately $30 million in goods during Fang's employment, Laera estimates the damage from Fang's activities to be $2.4 million. *See id.* Additionally, Fang "overpaid himself $400 per month salary and shorted another employee his rightful salary," overpayments that, according to Laera, totaled $30,400. *Id.* at 3, 7. Laera asserts claims for (1) civil conspiracy, (2) conversion, (3) fraud, (4) misrepresentation, (5) unfair trade practices, (6) unfair competition, (7) interference with contractual relations, (8) interference with prospective advantage, (9) injurious falsehood, and (10) breach of fiduciary trust. *Id.* at 4-7. He requests, *inter alia*,

damages of $2.4 million for the product "mark ups" and $30,400 for salary overpayments, as well as "permanent injunctive relief against all the violations and wrong doings alleged." *Id.* at 7.

Laera sued Fang on May 1, 2014, and properly served Fang on that date. Docs. 1, 2, 4. Fang failed to timely respond and, on May 28, 2014, Laera moved for, and received, a clerk's entry of default. Docs. 7, 8. Laera then filed a motion for default judgment under Federal Rule of Civil Procedure 55, which I denied without prejudice because Laera failed to demonstrate that the factors that the Ninth Circuit articulated in *Eitel v. McCool* merit a default judgment. Doc. 17. Laera filed a new motion that addresses the *Eitel* factors, but his damages argument remains wanting.

**Discussion**

Federal Rule of Civil Procedure 55 provides a mechanism for obtaining a default judgment against a party who has failed to plead or otherwise respond to claims brought against it. After clerk's entry of default, the movant must request a default judgment from the court under Rule 55(b)(2).[1] A district court has discretion to enter a judgment by default, which typically turns on the consideration of the seven *Eitel* factors: (1) potential prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the amount of money at stake in the action; (5) the potential disputes as to material facts; (6) whether the default was due to excusable neglect; and (7) the strong federal policy favoring adjudications on the merits.[2]

**A.    Possibility of Prejudice, Substantive Merits, and Sufficiency of the Complaint**

The first, second, and third *Eitel* factors all weigh in favor of a default judgment. Laera may suffer prejudice if a default judgment is not entered, as Fang has failed to respond to the complaint. As to the second and third factors, Laera's claims are both sufficient and have merit. The allegations in Laera's complaint, except for the damages allegations, were all deemed admitted by virtue of the clerk's entry of a default.

As I note below, I conclude that Laera has not proven his damages and thus I will not

---

[1] *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986); *Trustees of the Bricklayers & Allied Craftworkers Local 13 Defined Contribution Pension Trust for Southern Nevada v. Tumbleweed Development, Inc.*, 2013 WL 143378, at *2 (D. Nev. Jan. 11, 2013) (citing *Eitel*).

[2] *See Eitel*, 782 F.2d at 1471-72.

analyze each of Laera's ten claims here, nor what portion of Laera's damages, if any, is attributable to any particular claim. However, I note that Laera appears to at least adequately alleges a claim for conversion in some amount. "Conversion is a distinct act of dominion wrongfully exerted over personal property in denial of, or inconsistent with, title or rights therein or in derogation, exclusion or defiance of such rights."[3] "[C]onversion is an act of general intent, [and] which does not require wrongful intent and is not excused by care, good faith, or lack of knowledge."[4] Laera alleges that he employed Fang to perform several business-related tasks in China, and paid him a salary of $1,200 per month to do so. Doc. 1 at 2. Then, "[o]n or about April 7, 2014, Laera discovered that Fang was possibly engaging in wrong doings," and ultimately discovered that Fang "overpaid himself $400 per month salary" and shortchanged another employee, resulting in $30,400 in salary overpayments. *Id.* at 3, 7.[5] At an April 30, 2014, trade show in Las Vegas, Nevada, "Laera demanded his property be returned and [Fang] refused to do so." *Id.* Fang then refused to return those monies. *Id.* Leara has adequately pled this cause of action and the second and third *Eitel* factors weigh in favor of granting a default judgment on Laera's conversion claim.

B. **Sum of Money at Stake**

The fourth *Eitel* factor considers the amount of money at stake and the seriousness of the defendant's conduct, which involves an assessment of whether the recovery sought is proportional to the harm the defendant's conduct has caused.[6] The amount of money at stake in connection with Fang's salary overpayments alone—$30,400—is plainly significant.[7] However, it is not clear that

---

[3] *Edwards v. Emperor's Garden Restaurant*, 130 P.3d 1280, 1287 (Nev. 2006).

[4] *Evans v. Dean Witter Reynolds, Inc.*, 116 Nev. 598, 606, 5 P.3d 1043, 1048 (2000).

[5] Although conversion is subject to a three-year statute of limitations under Nevada law, NRS 11.190(3)(c); *Shupe & Yost, Inc. v. Fallon Nat'l Bank of Nev.*, 847 P.2d 720, 721 (Nev. 1993), the limitation period is tolled "until the injured party discovers or reasonable should have discovered facts supporting a cause of action." *Petersen v. Bruen*, 792 P.2d 18, 20 (Nev. 1990). Laera alleges that he discovered Fang's activities in April 2014, and there is no evidence that he knew or should have known of them at an earlier date.

[6] *See Trustees of the Bricklayers*, 2013 WL 143378, at *3 (citations omitted).

[7] *See id.* (finding that amount in controversy of less than $20,000 was significant in ERISA benefits action).

3

the harm Fang's nonpayment has caused is proportional to the recovery sought. Although Fang's dates of employment and the amount of money he added to his salary are known, it is yet unknown how long Fang "shortchanged" his fellow employee. Moreover, Laera provides no details regarding how he arrived at the $2.4 million figure from the $30 million in inventory he received, or that Fang was responsible for the entirety of these losses. Thus, this factor weighs against entry of a default judgment.

**C.    Possible Dispute as to Material Facts**

The fifth *Eitel* factor considers any potential disputes about material facts. Here, a number of material facts have already been deemed admitted as a matter of law by virtue of Fang's default. "An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."[8] Fang has filed no responsive pleading nor denied Laera's allegations. Thus, I may accept as true those portions of Laera's complaint that do not pertain to monetary liability. The damages that Laera requests, however, cannot be taken into consideration as a matter of law.[9] And while I have already pointed out several possible ambiguities regarding Fang's liability for Laera's product loss, Laera has adequately alleged a cause of action for conversion of wrongfully diverted wages at the very least. Thus, the fifth factor weighs in favor of a default judgment.

**D.    Excusable Neglect**

The sixth *Eitel* factor considers whether the default has resulted from excusable neglect. There is no evidence to suggest excusable neglect. The record reflects that a summons was issued to Fang on May 1, 2014, and service was personally effectuated on Fang at the Las Vegas Convention Center on that date. Laera moved for a clerk's entry of default on May 28, 2014, after Fang's opportunity to answer or otherwise respond expired under Fed. R. Civ. Proc. 12. Doc. 6. Therefore,

---

[8] Fed. R. Civ. Proc. 8(b)(6).

[9] *See Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977) (citation omitted) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."); *see also Trustees of the Construction Industry and Laborers Health and Welfare Trust v. Bust Busters Air Quality Management, L.L.C.*, 2013 WL 876237, at *1-*2 (D. Nev. Mar. 7, 2013) (citing *Geddes*).

Fang had an adequate opportunity to respond to Laera's allegations, and I find that the sixth *Eitel* factor weighs in favor of entering a default judgment.

### E.  Decision on the Merits

The final *Eitel* factor takes into consideration the strong policy preference for disposing of cases on their merits.[10]  Fang's failure to answer Laera's complaint or otherwise engage in the litigation process casts doubt over the feasibility of any eventual decision on the merits.  I find that the policy preference in favor of decisions on the merits will not, without more, preclude entry of a default judgment.

In their totality and on balance, the *Eitel* factors weigh in favor of entering a default judgment against Fang.

### F.  Relief Requested

#### 1.  Injunctive Relief

In his complaint, Laera requests "permanent injunctive relief against all the violations and wrong doings alleged." Doc. 1 at 7.  Assuming *arguendo* that Laera had meaningfully linked his request for injunctive relief to one of his ten causes of action—which he does not—he makes no effort to re-urge his injunctive-relief request in his new motion for default judgment.  To the contrary, his declaration in support of the motion states that his claim is for $2,434,400, and his proposed order requests entry of judgment for the same amount. *See* Doc. 19 at 19; Doc. 19-1 at 1. For injunctive relief to issue, a plaintiff must demonstrate "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent

---

[10] *See Eitel*, 782 F.2d at 1472.

injunction."[11]  In any case, injunctive relief is "a drastic and extraordinary remedy"[12] that does not issue as a matter of course.  Laera has not demonstrated that his injury cannot be remedied monetarily, and, thus, he has not established the irreparable harm necessary for injunctive relief.

### 2. Determination of Default Award

The final consideration is the amount of the monetary award.  Laera offers a one-page affidavit to support his damages demand in which he states simply, "the amount due to plaintiff is $2,434,400.00."  Doc. 19-1 at 1.  Laera's declaration provides virtually no insight into how he has arrived at this number.  Judging from the now-accepted allegations in the complaint, he asserts that the $2.4 million in damages was sustained from Fang's 8% product markup or $30 million in product shipments and the $30,400 that Fang allegedly siphoned off in salary overpayments.  Doc. 1 at 7.  But these two numbers add up to only $2,430,400, with the additional $4,000 left unexplained.  Laera's sworn declaration does not provide any insight on how he calculated his amount of loss, such as by showing what documents he relied on in coming to the conclusion that Fang had appropriated money from both shipment of products and siphoning of employee wages.[13]  Elsewhere, Laera states he imported "approximately $30 million worth of goods" during Fang's period of employment, Doc. 19 at 5, and uses this "approximate" figure to conclude that Fang converted $2.4 million of Laera's money through product mark-ups.  It is unclear to me why Laera must "approximate" the amount of goods he received as shipments for his own business, when a review and accounting from ordinary business records should provide the value of imported goods with specificity and documentary proof.  Similarly, although Laera avers that he arrived at the 8% mark-up figure after he "carefully review[ed] the evidence collected by vendors, manufacturers and

---

[11] *Ebay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Flexible Lifeline Systems, Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 995-97 (9th Cir. 2011).  *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 32 (2008) (quotation omitted) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success").

[12] *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010).

[13] *See, e.g.*, *U.S. S.E.C. v. Brandonisio*, 2013 WL 5371626 (D. Nev. Sept. 24, 2013); *Trustees of Teamsters Local 631 Sec. Fund for Southern Nevada v. Knox Installation-Dismantling and Services, Inc.*, 2013 WL 4857897 (D. Nev. Sept. 9, 2013).

employees," he provides no additional evidence of the same that I can use to determine that the 8% markup was a reasonable approximation of the harm suffered.

Accordingly, I find that Laera's damages request is lacking the level of documentary proof necessary to justify the requested damages. Should Laera file a renewed motion for default judgment, he is cautioned that failure to include properly authenticated support for the requested damages amount will result in the continued denial of his motion.

## Conclusion

Accordingly, **IT IS HEREBY ORDERED** that plaintiff's motion for default judgment **[Doc. 19] is DENIED WITHOUT PREJUDICE**.

DATED: March 25, 2015.

_____
Jennifer A. Dorsey
United States District Judge