# UNITED STATES DISTRICT COURT

### FOR THE
### DISTRICT OF NEVADA
333 S LAS VEGAS BLVD, LAS VEGAS, NV 89101 - TEL (702) 464-5400

| | |
|---|---|
| Vito Antonio Laera | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| V. | ) |
| | ) |
| Cai Jun Fang, | ) |
| | ) |
| | ) |
| *Defendant* | ) |

Case No. 2:14-cv-00667-JAD-NJK

FILED _____ RECEIVED
ENTERED _____ SERVED ON
COUNSEL/PARTIES OF RECORD

DEC 2 8 2015

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

## MOTION FOR ENTRY OF DEFAULT JUDGMENT DATED 12-24-15

Vito Antonio Laera requests that the clerk enter judgment against defendant Cai Jun Fang, who is neither a minor nor an incompetent person, in the certain amount of $790,794.30 as shown on the attached affidavit pursuant to;

Rule 55. (b) Entering a Default Judgment.

(1) By the Clerk. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

In support of this request plaintiff relies upon the following;

## I. INTRODUCTION

This action stems from *pro se* plaintiff Vito Antonio Laera's longstanding working relationship with Cai Jun Fang, who worked for Laera in China. Laera sued Fang for Civil Conspiracy, Converted, Fraud, Misrepresentation, Unfair Trade Practice, Unfair Competition, Interference with Contractual Relations, Interference with Prospective Advantage, Injurious Falsehood and Breach of Fiduciary Trust on May 1, 2014, and properly served a summons on Fang on that date. Docs. 1, 2, 4. Fang failed to plead or otherwise respond within the time period specified in the Federal Rules of Civil Procedure, and on May 28, 2014, Laera moved for, and received, a clerk's entry of default. Docs. 7, 8. Laera then filed a motion for default judgment, which "relies upon the record in this case," as well as an affidavit Laera executed and attached to the motion. Doc. 9. The court then issued an Order, Doc 17 that contained, in part, as follows;

> *"Laera's motion does not specifically consider any of the Eitel factors, except for the amount of money at stake. Laera is permitted to re-file his motion with a detailed and properly supported discussion of why his claims for relief satisfy the factors laid out by Eitel and its progeny. Laera is cautioned that vague statements regarding "the record" will likely be found insufficient, as the Court is not obligated to rummage through the record to make his "best case" for him."*

The court again issued an order, Doc 21, that contained in part;

> "Although Laera satisfies the majority of the Eitel factors, his damages request is founded on speculation. I thus deny his motion without prejudice to Laera's filing of another motion with greater proof of damages."

On Doc 22 Laera asks the court to file a document under seal, however the court denied Laera's motion to file under seal, Doc 23. Laera now satisfied his concerns by redacting (therefore not requiring to file under seal) per piece prices and quantities and only shows totals that adequately show Fang's "mark ups" without jeopardizing any trade secrets.

I am hereby refiling the motion for default with more details, along with properly supported discussions and affidavit by myself and ex-employee Wei Ting, to the best of my ability.

## II. RELEVANT FACTUAL BACKGROUND

1. On or about January 15th 2002 the parties entered into an agreement in Las Vegas Nevada. This agreement, in relevant part is summarized below:

    a. Cai Jun Fang desired employment by Laera.

    b. Laera hired and paid Fang a salary of $1,200.00 per month to perform several tasks in China that included but were not limited to sourcing, managerial services, office manager, translator and general business.

    c. Cai Jun Fang was/is an employee of Laera.

2. Cai Jun Fang had a Fiduciary position and relationship with Laera.

3. Laera trusted Fang and depended on Fangs accurate and truthful representations of facts.

4. Fang had knowledge of Laera's contracts, clients, prospective clients, and trade secrets.

5. Fang was entrusted with Laera's property and its interest's.

6. Cai Jun Fang hired an additional 3 employees, instructed to do so by Laera. These employees were supposed to be paid a salary ranging from $800.00 thru $1,200.00 per month by Laera. Their duties varied and included but were not limited to inspecting product at the factories (quality control), vendor relations, negotiations, and any and all aspects of business in general.

7. Laera paid (rent) for an office in Xiamen, China that was needed to conduct business. Utilities were paid separately by Laera.

8. Laera paid (rent) for an apartment in Guangdong, China that was required to house employees while conducting business in that area.

9. Laera relied on Fang's accurate and truthful translation of Chinese into English from vendors and manufactures.

10. Fang made arrangements and or agreements with the vendors and or manufacturers to achieve a lawful benefit to Laera.

11. Laera was unaware of any wrongful actions by Fang and had no reason to believe otherwise.

12. On or about April 7th 2014 Laera learned that Fang was possibly engaging in wrong doings and investigated these allegations with vendors, manufacturers and employees.

13. After carefully reviewing the evidence collected by vendors, manufacturers and employees it appears Fang added an average of 8% to the cost of the goods and or services.

14. During Fangs employment Laera imported approximately $30,000,000.00 worth of goods.

15. Damages have been suffered by plaintiff as a direct and proximate result of the wrong doings by the Defendants "Mark ups" and continued wrong doings in the amount of $759,794.30, see affidavits. The documents I am relying on in coming to the conclusion that Fang had appropriated money from shipment of product are attached as Exhibit B and C, these are invoices to me and factory orders placed. Fang was responsible for the entirety of these losses and pocketed every cent for himself.

    a. Previously I have stated that the damages were 2.4 million, based on the evidence I have collected by vendors, manufacturers and

employees, however, the court has put upon me the burden of providing greater proof of damages and in this case the best I can do is provide documentations from January 2010 thru April 2014 as I do not have records earlier than January 2010.

16. Fang overpaid himself $400 per month salary and "short changed" another employee his rightful salary. The document I am relying on in coming to the conclusion that Fang had appropriated money by siphoning of employee wages is by Wei Tings' declaration. Mr Wei Ting was employed by me, via Fang, for a salary of $1,000.00 per month from November 2008 until March 2014, totaling 76 months of employment. Fang "shortchanged" Mr Wei Ting $400.00 per month and siphoned $30,400.00 over the years. Fang was responsible for the entirety of these losses and pocketed every cent for himself.

17. Damages have been suffered by Laera as a direct and proximate result of the wrong doings by the Fang.

18. On April 30th in Las Vegas Nevada during the 2014 Coverings tradeshow Laera demanded his property be returned and the defendant refused to do so.

19. On May 1st 2014, Defendant, and his wife, Exhibited at the 2014 Coverings

    Tradeshow In Las Vegas Nevada as;

    a. Xiamen Elite Industry & Trade Co., Ltd.

    b. booth number was 8170

    c. The show was from April 29th to May 2nd

20. On May 1st 2014 Defendant was served.

    a. Shortly after being served, Plaintiff approached Defendant and his

       wife and the parties discussed the matter.

    b. The parties agreed to meet the next day at the MGM, to continue the

       meeting.

21. On May 2nd 2014 the parties had a meeting at the MGM main lobby bar and

    discussed the following;

    a. Plaintiffs evidence as to the accusations.

    b. A resolution to the matter.

    c. An agreement to resolve the matter; which was made but never

       executed by Defendant.

22. On May 20th 2014 Defendant contacted via email and in part confessed to

    the wrong doing and proposed a counter offer, that was refused, as

    follows;

a. Defendant confessed adding $1.00 per sink, unauthorized and;

b. Defendant appears to offer Plaintiff an offer of $107,585.14 to drop the lawsuit, which was declined.

23. On July 3rd 2014 Mr. Mike Lin, an individual acting in active concert with the Defendant communicated a message to Plaintiff reference unfinished business. Defendant and Mr. Mike Lin commence a vast array of harassing communications between Plaintiff and other third parties, like Classic Custom Brokers; I believe in an attempt to disturb relations between Plaintiff and his clients/suppliers.

24. On July 14th 2014 Mr. Mike Lin and Defendants again disrupt my relationship with my clients/suppliers by attempting to divert property that is owned by me to another third party, by involving yet another third party "OEC Group".

## III. LEGAL STANDARD FOR DEFAULT JUDGMENT

Federal Rule of Civil Procedure 55 provides a mechanism for obtaining a default judgment against a party who has failed to plead or otherwise respond to claims brought against it. After clerk's entry of default, the movant must request a default judgment from the court under Rule 55(b)(2). A district court has

discretion to enter a judgment by default, which typically turns on the consideration of seven factors: (1) potential prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the amount of money at stake in the action; (5) the potential disputes as to material facts; (6) whether the default was due to excusable neglect; and (7) the strong federal policy favoring adjudications on the merits.

## IV. DISCUSSION

### A. Procedural Requirements

In the instant case, Plaintiff has satisfied the procedural requirements for default judgment pursuant to Fed.R.Civ.P. 55(a), Local Rule 55-1, and Fed.R.Civ.P. 54(c). Pursuant to Fed.R.Civ.P. 55(a), the Court Clerk properly entered default against Defendant. As required by Local Rule 55-1, Plaintiff provides proof in their Application for Default Judgment that: (1) default was entered against Defendant May 28, 2014; (2) Defendant failed to respond to the Complaint; (3) Defendant is neither an infant nor an incompetent person; (4) Defendant is not otherwise exempt under the Soldiers' and Sailors' Civil Relief Act of 1940. Finally, the motion complies with Fed.R.Civ.P. 54(c) in that it requests a remedy that is not different in kind from that prayed for in the Complaint. Thus, the court, in its discretion,

may order a default judgment against Defendant based on the Eitel factors, outlined below.

# B. Eitel Factors

## 1. Possibility of Prejudice

The first Eitel factor considers whether the plaintiff will suffer prejudice if default judgment is not entered. Potential prejudice to Plaintiff favors granting a default judgment.

In this case, if Plaintiffs' motion for default judgment is not granted, Plaintiff will likely be without other recourse for recovery.

## 2. Substantive Merits and Sufficiency of the Complaint

The 2nd and 3rd Eitel factors are (1) the merits of Plaintiffs' substantive claim, and (2) the sufficiency of the complaint. Eitel, 782 F.2d at 1471-72. The Ninth Circuit has suggested that these two factors require that a plaintiff "state a claim on which the [plaintiff] may recover." Kloepping, 1996 WL 75314, at *2 (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir.1978)).

In the instant action, Plaintiffs alleges/prevails on the following claims;

**A.** <u>**CIVIL CONSPIRACY**</u>

    **a.** A civil conspiracy occurs when "two or more people agree to accomplish an unlawful purpose, or to accomplish a lawful object by unlawful means, causing damages." <u>Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund</u>, 201 Ariz. 474, 498, 38 P.3d 12, 36 (2002) (en banc) (quoting <u>Baker v. Stewart Title & Trust of Phx.</u>, 197 Ariz. 535, 542, 5 P.3d 249, 256 (Ct. App. 2000)).

    **b.** To prevail on this claim Plaintiff must prove "a claim for civil conspiracy must include an actual agreement, proven by clear and convincing evidence." <u>Wells Fargo</u>, 201 Ariz.at 499, 38 P.3d at 37.

    **c.** Plaintiffs' complaint properly alleges the elements for the above cause of action; The Complaint sets forth the parties had an actual agreement, and; Defendant admitted to have "added US$1.00 per sink" with "Joe", see Doc.7 page 8.

## B. <u>CONVERTION</u>

    a. Conversion is defined as "a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights." Evans v. Dean Witter Reynolds, Inc., 116 Nev. 598, 606, 5 P.3d 1043, 1048 (2000) (internal quotations omitted).

    b. Conversion is an act of general intent, which does not require wrongful intent and is not excused by care, good faith, or lack of knowledge. See id.; Bader v. Cerri, 96 Nev. 352, 357 n. 1, 609 P.2d 314, 317 n. 1 (1980). Whether a conversion has occurred is generally a question of fact for the jury. See Bader, 96 Nev. at 356, 609 P.2d at 317.FN7. Evans v. Dean Witter Reynolds, Inc., 116 Nev. 598, 5 P.3d 1043 (Nev.,2000).

    c. Plaintiffs' complaint properly alleges the elements for the above cause of action; Plaintiff asked for his property back and it was not returned by defendant.

## C. <u>FRAUD</u>

    a. Constructive Fraud is the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent

because of its tendency to deceive others or to violate confidence.

(2) Constructive fraud is characterized by a **breach of duty arising out of a fiduciary or confidential relationship**. (3**) A "confidential or fiduciary relationship" exists when one reposes a special confidence in another so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence.** Long v. Towne, 98 Nev. 11, 13, 639 P.2d 528, 529-30 (Nev. 1982).

**b.** Plaintiffs' complaint properly alleges the elements for the above causes of action; Plaintiff reposed a special confidence in Defendant and was bound to act in good faith, that is honestly, with due regard to the interests of the Plaintiff; Fang breached that duty and admitted to doing so.

## D. MISREPRESENTATION/INJURIOUS FALSEHOOD

a. Misrepresentation, aka, Fraudulent or Intentional Misrepresentation has the following elements;

(1) defendant made a false representation,

(2) with knowledge or belief that the representation was false or without a sufficient basis for making the representation,

(3) the defendant intended to induce the plaintiff to act or refrain from

acting on the representation,

(4) the plaintiff justifiably relied on the representation, and

(5) the plaintiff was damaged as a result of his reliance.

J.A. Jones Const. Co. v. Lehrer McGovern Bovis, Inc., 120 Nev. 277, 290–91, 89 P.3d 1009, 1018 (2004);

Simularly, **Fraud By Omission, w**ith respect to the false

representation element, the suppression or omission " 'of a

material fact which a party is bound in good faith to disclose is

equivalent to a false representation, since it constitutes an

indirect representation that such fact does not exist.

Nelson v. Heer, 123 Nev. 217, 163 P.3d 420 (Nev. 2007) (quoting Midwest Supply, Inc. v. Waters, 89 Nev. 210, 212-13, 510 P.2d 876, 878 (1973).

**b.** To prevail on this claim Plaintiff must prove the intention of the

Defendant when the agreement was entered into. The intention is

shown by evidence that sufficiently indicates its existence.

In actions involving fraud, the circumstances of the fraud are required by Nev.R.Civ.P. 9(b) to be stated with particularity. The circumstances that must be detailed include averments to the time, the place, the identity of the parties involved, and the nature of the fraud or mistake."
*Brown v. Kellar*, 97 Nev. 582, 583-84, 636 P.2d 874, 874 (Nev. 1981).

c. Plaintiffs' complaint properly alleges the elements for the above causes of action, including averments to the time, the place, the identity of the parties involved, and the nature of the fraud.

E. **UNFAIR TRADE PRACTICE and UNFAIR COMPETITION**

a. RS 598.0915 "Deceptive trade practice" defined. A person engages in a "deceptive trade practice" if, in the course of his or her business or occupation, he or she:

    i. Makes false or misleading statements of fact concerning the price of goods or services for sale or lease, or the reasons for, existence of or amounts of price reductions.

    ii. Fraudulently alters any contract, written estimate of repair, written statement of charges or other document in connection with the sale or lease of goods or services.

    iii. Knowingly makes any other false representation in a transaction.

b. Plaintiffs' complaint properly alleges the elements for the above cause of action and demonstrates that **Fang,** in the course of his occupation made false statements of fact concerning the price of

goods for sale, and; Fraudulently altered invoices from my supplier in

connection with the sale of goods or services.

## F. **INTERFERENCE WITH CONTRACTUAL RELATIONS**

a. "[B]ecause the action involves an intentional tort, the inquiry usually concerns the defendant's ultimate purpose or the objective that he or she is seeking to advance. Thus, mere knowledge of the contract is insufficient to establish that the defendant intended or designed to disrupt the plaintiff's contractual relationship; instead, the plaintiff must demonstrate that the defendant intended to induce the other party to breach the contract with the plaintiff. Accordingly, the plaintiff must inquire into the defendant's motive."
J.J. Indus., LLC v. Bennett, 119 Nev. 269, 275–76, 71 P.3d 1264, 1268 (2003).

b. To prevail on this claim Plaintiff must prove that the defendant

intended to induce the other party to breach the contract with the

plaintiff.

c. Plaintiffs' complaint properly alleges the elements for the above

causes of action, and by confession of the Defendant, proves

intended and indeed induced another party to breach a contract with

the plaintiff.

## G. **INTERFERENCE WITH PROSPECTIVE ADVANTAGE;**

a. Is a prospective contractual relationship between the plaintiff and a third party; with knowledge by the defendant of the prospective relationship; and his intent to harm the plaintiff by preventing the relationship; with the absence of privilege or justification by the

defendant; and actual harm to the plaintiff as a result of the defendant's conduct.

    i.  Wichinsky v. Mosa, 109 Nev. 84, 88, 847 P.2d 727 (1993). Leavitt v. Leisure Sports, Inc., 103 Nev. 81, 88, 734 P.2d 1221, 1225 (1987).

**b.** Plaintiffs' complaint properly alleges the elements for the above causes of action, and demonstrates that the Plaintiff did have prospective contractual relationship with a third party, Joe; with knowledge by the defendant of the prospective relationship, which I did; and Defendants intent to harm the plaintiff by preventing the relationship, the intent being gain by deceit, therefore preventing an honest relationship; with the absence of privilege or justification by the defendant; and actual harm to the plaintiff as a result of the defendant's conduct.

## H. **BREACH OF FIDUCIARY TRUST**

a. A fiduciary relationship is deemed to exist when one party is bound to act for the benefit of the other party. Such a relationship imposes a duty of utmost good faith. Hoopes v. Hammargren, 725 P. 2d 238 (Nev. 1986).

b. In Nevada, a claim for breach of fiduciary duty has three elements:

    i.  existence of a fiduciary duty;

ii.  breach of the duty;

iii.  and the breach proximately caused the damages.

Klein v. Freedom Strategic Partners, LLC, 595 F. Supp. 2d

1152, 1162 (D. Nev. 2009)

c.  Plaintiffs' complaint properly alleges the elements for the above

causes of action. The Complaint sets forth the details of the existence

of Defendant's fiduciary duty; a breach of that duty; and the breach

proximately caused the damages.

## 3. Amount at Stake

Under the 4th Eitel factor, the court must consider the amount of money at

stake in relation to the seriousness of Defendant's conduct.

In this case the amount at stake is plainly significant.

## 4. Possibility of Dispute

The 5th Eitel factor considers the possibility of dispute as to any material

facts in the case. Upon entry of default, all well-pleaded facts in the complaint are

taken as true, except those relating to damages. See TeleVideo, 826 F.2d at 917-18.

In this case no genuine dispute of material facts would preclude granting

Plaintiffs' motion.

## 5. Possibility of Excusable Neglect

The 6th Eitel factor considers the possibility that the default resulted from excusable neglect.

In this case, Defendant was properly served with summons and complaint. Although Defendant did not respond to the Complaint, he contacted Plaintiff to discuss settlement of the matter and entered into an express contractual agreement on May 2, 2014, see Document 7 page 6.

Given Defendant's early participation in the matter, the possibility of excusable neglect is remote.

## 6. Policy for Deciding on the Merits

The 7th Eitel factor considers the strong federal policy favoring adjudications on the merits.

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472.

However, the mere existence of Fed.R.Civ.P. 55(b) indicates that "this preference, standing alone, is not dispositive." Kloepping, 1996 WL 75314, at *3. Moreover, Defendant's failure to answer Plaintiffs Complaint makes a decision on the merits impractical, if not impossible.

Under Fed.R.Civ.P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action. Thus, "the preference to decide cases on the merits does not preclude a court from granting default judgment." Kloepping, 1996 WL 75314, at *3.

The Eitel factors weigh in favor of a default judgment and in this case the court is not precluded from entering default judgment against Defendant.

## V. CONCLUSION

The factual allegations in the Complaint are deemed admitted by virtue of Defendants default and should suffice the Court to establish Defendants liability for violations and damages.

## VI. RELIEF REQUESTED

Vito Antonio Laera requests that the clerk enter judgment against defendant Cai Jun Fang, who is neither a minor nor an incompetent person, in the certain amount of $790,194.30 as shown on the attached affidavits.

Injunctive relief is no longer requested because the injury can be remedied monetarily.

Errors and omissions expected. The failure to specify any particular act of misconduct should not be construed as tolerance thereof.

Respectfully submitted and sworn on December 24, 2015

Vito Antonio Laera
10930 Park Road
Charlotte, NC 28226

# UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF NEVADA

333 S LAS VEGAS BLVD, LAS VEGAS, NV 89101 - TEL (702) 464-5400

| | | |
|---|---|---|
| Vito Antonio Laera | ) | |
| | ) | |
| _Plaintiff,_ | ) | |
| V. | ) | |
| | ) | Case No. 2:14-cv-00667-JAD-NJK |
| Cai Jun Fang, | ) | |
| | ) | |
| _Defendant_ | ) | |

## AFFIDAVIT IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT DATED 12-24-15

I, Vito Antonio Laera, being duly sworn, state as follows:

1. I am the prose plaintiff in the above-entitled action and I am familiar with the file, records and pleadings in this matter.

2. The summons and complaint were served upon the defendant on May 1, 2014.

3. An answer to the complaint was due on May 22, 2014. No response was served within the time allowed by law nor has the defendant sought additional time within which to respond.

4. The default of defendant was entered on May 28, 2014.

5. As required by the Service members Civil Relief Act of 2003, I have confirmed that the defendant(s) is (are) not currently in active military service.

6. To my best information and belief, defendant is not an infant or incompetent person.

7. The amount due to plaintiff by defendant is;

    a. $759,794.30 appropriated from marking up shipment of product;

        i. The documents I am relying on in coming to the conclusion that Fang had appropriated money from marking up shipments of products are Exhibits A, B and C.

        ii. Exhibit A is a declaration/affidavit by Mr Wei Ting confirming Fangs' wrongdoing and damages to me;

    iii.   **Exhibit B is a detailed list of all the marked up shipments of product by Fang to me that total $759,794.30.**

    iv.   **Exhibit C are all the documents that pertain to all the marked up shipments of product by Fang that are available to me;**

        1.   **These documents consist of invoices from Fang to me, signed by Fang, and factory orders that I later obtained from the factories;**

        2.   **I will explain the first marked up shipment of product by Fang so the court understands how I came up with the $759,794.30;**

        3.   **In Exhibit B the first item is PL 100107 that consists of two factory orders, one from Xinhe in the amount of $20,939.00 and the other from Speed for $5,494.35;**

        4.   **Fangs invoices to me for these two shipments are Invoice# 100107A for $21,907.40 and Invoice# 100107B for $5,643.00, please note again that each invoice is signed by Fang;**

        5.   **These documents prove that Fang marked up this shipment of product by $1,117.05;**

        6.   **The same methodology applied to all the invoices/documents amounts to $759,794.30.**

        7.   **I believe Fang was responsible for the entirety of these losses and pocketed every cent for himself.**

**b.**  **$30,400.00 appropriated from shortchanging a fellow employee;**

    i.   **Fang overpaid himself $400 per month salary and "short changed" another Mr Wei Ting his rightful salary.**

    ii.   **The document I am relying on in coming to the conclusion that Fang had appropriated money by siphoning of employee wages is by Mr Wei Tings' declaration, see Exhibit A.**

    iii.   **Mr Wei Ting was employed by me, via Fang, for a salary of $1,000.00 per month from November 2008 until March 2014, totaling 76 months of employment.**

Wei Ting

    iv.  Fang "shortchanged" Mr ~~Joe Wei~~ $400.00 per month and siphoned $30,400.00 over the years.

    v.  I believe Fang was responsible for the entirety of these losses and pocketed every cent for himself.

  c.  The total amount due to plaintiff by defendant is $790,194.30.

Sworn to and subscribed before me
this 24th day of December, 2015

Vito Antonio Laera

Notary Public
My Commission Expires: 11/5/2020



# UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF NEVADA

333 S LAS VEGAS BLVD, LAS VEGAS, NV 89101 - TEL (702) 464-5400

| | |
|---|---|
| Vito Antonio Laera ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| V. ) | |
| ) | Case No. 2:14-cv-00667-JAD-NJK |
| Cai Jun Fang, ) | |
| ) | |
| ) | |
| *Defendant* ) | |

## <u>DEFAULT JUDGMENT</u>

**The defendant, Cai Jun Fang, having failed to appear, plead or otherwise defend in this action, and default having been entered on May 28, 2014, and prose plaintiff having requested judgment against the defaulted defendant and having filed a proper motion and affidavit (declaration) in accordance with Federal Rule of Civil Procedure 55 (a) and (b); Judgment is hereby entered in favor of plaintiff Vito Antonio Laera and against defendant Cai Jun Fang in the amount of $790,194.30 US dollars.**

**Dated this ____ day of _____, 2015.**

_____

**Clerk of Court**

# UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF NEVADA

333 S LAS VEGAS BLVD, LAS VEGAS, NV 89101 - TEL (702) 464-5400

| | | |
|---|---|---|
| Vito Antonio Laera | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| V. | ) | |
| | ) | Case No. 2:14-cv-00667-JAD-NJK |
| Cai Jun Fang, | ) | |
| | ) | |
| | ) | |
| *Defendant* | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **MOTION FOR ENTRY OF DEFAULT JUDGMENT DATED 12-24-15** and **AFFIDAVIT IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT DATED 12-24-15** and DEFAULT JUDGMENT and Exhibits A, B and C was served upon the party listed below by depositing a copy of same First Class mail, on this date, addressed to:

Cai Jun Fang
RM 2004, No. 107
Hui Zhan Nan Li
Qianpu, Xiamen, China

Dated December 24, 2015

Vito Antonio Laera
10930 Park Road
Charlotte, NC 28226