UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Vito Antonio Laera,<br><br>       Plaintiff<br><br>v.<br><br>Cai Jun Fang,<br><br>       Defendant | 2:14-cv-00667-JAD-NJK<br><br>**Order Granting in Part and Denying in Part Motion for Default Judgment, Entering Default Judgment, and Closing Case**<br><br>[ECF No. 24] |

    This breach-of-contract action stems from pro se plaintiff Vito Antonio Laera's allegedly longstanding business relationship with Cai Jun Fang, who performed business services for Laera in China until Laera discovered that Fang was siphoning money off the books.  This is Laera's third attempt to secure a default judgment against Fang.  I denied Laera's first motion for default judgment without prejudice because he failed to address the *Eitel* factors,[1] and I denied his second motion for default judgment without prejudice (which addressed the *Eitel* factors) because he failed to sufficiently prove damages.[2]  Laera's third motion for default judgment both addresses the *Eitel* factors and includes documents to support his damages request.[3]  Because Laera has now shown that the *Eitel* factors weigh in favor of granting default judgment and has sufficiently proven the bulk of his damages request, I grant in part and deny in part his motion, enter default judgment for Laera and against Fang in the amount of $759,794.30, and close this case.[4]

**Background**

    Laera alleges that he employed Fang between 2002 and 2014 to perform China-based business services, including "sourcing, managerial services, office management, translating, and

---

[1]  ECF No. 17.

[2]  ECF No. 27.

[3]  ECF No. 24.

[4] I find this motion suitable for disposition without oral argument. L.R. 78-1.

general business."[5] In April 2014, Laera discovered that Fang had "added an average of 8% to the cost of the goods and or services" that Laera imported from China and pocketed that extra 8% for himself.[6] Laera also discovered that Fang had "overpaid himself $400.00 per month salary" by "shorting another employee his rightful salary," overpayments that, according to Laera, totaled $30,400.[7]

Laera initially requested $2.4 million in damages for the product mark-ups,[8] but has now scaled back his damages request to $790,194.30. He seeks $759,794.30 in damages for the product mark-ups and $30,400 in damages for the salary overpayments. Laera asserts claims for (1) civil conspiracy, (2) conversion, (3) fraud, (4) misrepresentation, (5) unfair trade practices, (6) unfair competition, (7) interference with contractual relations, (8) interference with prospective advantage, (9) injurious falsehood, and (10) breach of fiduciary trust.[9]

Laera sued Fang on May 1, 2014, and properly served Fang on that date.[10] Fang failed to timely respond and Laera moved for, and received, a Clerk's entry of default.[11] Laera then filed a motion for default judgment, which I denied without prejudice because Laera failed to address the *Eitel* factors.[12] Laera then filed a new motion addressing the *Eitel* factors, which I also denied because he failed to sufficiently prove damages.[13] Laera now submits this third motion for default judgment that both addresses the *Eitel* factors and includes documentation to support his

---

[5] ECF No. 1 at 2.

[6] *Id*. at 5.

[7] *Id*. at 3, 7.

[8] ECF Nos. 9, 19.

[9] *Id.* at 2.

[10] ECF Nos. 1, 2, 4.

[11] EFC Nos. 7, 8.

[12] ECF No. 17.

[13] ECF Nos. 18, 20, 21.

damages request.

## Discussion

**A.    Default judgement under FRCP 55**

Federal Rule of Civil Procedure 55 provides a mechanism for obtaining a default judgment against a party who has failed to plead or otherwise respond to claims brought against it. After a Clerk's entry of default, the movant must request a default judgment from the court under Rule 55(b)(2).[14] A district court has discretion to enter a judgment by default, which typically turns on consideration of the seven *Eitel* factors: (1) potential prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the amount of money at stake in the action, (5) the potential disputes of material facts, (6) whether the default was due to excusable neglect, and (7) the strong federal policy favoring adjudications on the merits.[15]

### 1.    *Possibility of prejudice, substantive merits, and sufficiency of the complaint*

The first three *Eitel* factors weigh in favor of entering a default judgment. Laera will suffer prejudice if a default judgment is not entered because Fang refuses to participate in this case despite having been properly served with a copy of the summons and complaint and engaging in informal settlement negotiations after Laera filed this action.[16] As to the second and third factors, Laera's claims are both sufficient and have merit. All of Laera's factual allegations (besides those relating to damages) are deemed admitted by virtue of Fang's default, and Laera adequately pleads at least one claim for conversion.

Under Nevada law, "[c]onversion is a distinct act of dominion wrongfully exerted over personal property in denial of, or inconsistent with, title or rights therein or in derogation,

---

[14] *Eitel v. McCool,* 782 F.2d at 1470, 1471 (9th Cir. 1986); *Trustees of the Bricklayers & Allied Craftworkers Local 13 Defined Contribution Pension Trust for S. Nev. v. Tumbleweed Dev., Inc.,* 2013 WL 143378, at *2 (D. Nev. Jan. 11, 2013) (citing *Eitel*).

[15] *See Eitel,* 782 F.2d at 1471–72.

[16] ECF Nos. 4, 24 at 7–8.

3

exclusion or defiance of [those] rights."[17]  "[C]onversion is an act of general intent, which does not require wrongful intent and is not excused by care, good faith, or lack of knowledge."[18]  Laera adequately pleads a conversion claim based on the money Fang pocketed from the product mark-ups.  He alleges that Fang "added an average of 8%" to the costs of Laera's exports and that Fang kept the money for himself.[19]  Accordingly, I find that the first three *Eitel* factors weigh in favor of granting default judgment.

### 2. *Sum of money at stake and possible dispute of material facts*

The fourth and fifth *Eitel* factors also weigh in favor of granting a default judgment. Factor four considers the amount of money at stake and the seriousness of the defendant's conduct, which involves an assessment of whether the recovery sought is proportional to the harm the defendant's conduct has caused.[20]  The amount of money in dispute is plainly significant—Fang's product mark-ups alone total more than $759, 794.30,[21] and Laera offers invoices to show that this amount is directly proportional to the harm Fang caused.[22]

The fifth *Eitel* factor considers any potential disputes about material facts.  All non-damages material facts have been admitted as a matter of law by virtue of Fang's default.[23]  Because Laera sufficiently alleges at least two claims for conversion, and the material facts supporting these claims are deemed admitted, the fifth *Eitel* factor also weighs in favor of default judgment.

---

[17] *Edwards v. Emperor's Garden Rest.,* 130 P.3d 1289, 1287 (Nev. 2006).

[18] *Evans v. Dean Witter Reynolds, Inc.*, 5 P.3d 1043, 1048 (Nev. 2000).

[19] ECF No. 1 at 5.

[20] *See Trustees of the Bricklayers,* 2013 WL 143378, at *3 (internal citations omitted).

[21] *See id.* (finding that amount in controversy of less than $20,000 was significant in ERISA benefits action).

[22] ECF No. 24-1–24-7.

[23] FED. R. CIV. PROC. 8(b)(6)("An allegation– other than one relating to the amount of damages–is admitted if a responsive pleading is required and the allegation is not denied.").

### 3.    *Excusable neglect*

The sixth *Eitel* factor considers whether the default has resulted from excusable neglect of which there is no evidence to suggest.  As the record reflects, a summons was issued to Fang on May 1, 2014, and service was effectuated on Fang at the Las Vegas Convention Center on that date.  Laera moved the Clerk to enter default on May 28, 2014, after Fang's opportunity to respond had expired under FRCP 12.[24]  To date, Fang has never appeared to defend this case.  Because Fang had ample opportunity to respond to the allegations within Laera's complaint and has never appeared in this case, I find that the sixth *Eitel* factor also weighs in favor of entering a default judgment.

### 4.    *Decision on the merits*

The final *Eitel* factor takes into consideration the strong policy preference for disposing of cases on their merits.[25]  Fang's failure to answer Laera's complaint or otherwise engage in the litigation process makes it unlikely that this case could eventually be resolved on the merits.  I find that the policy preference in favor of decisions on the merits will not, without more, preclude entry of a default judgment.  On balance, the *Eitel* factors weigh heavily in favor of entering a default judgment against Fang, so I proceed to determine the amount of the monetary award.

### B.    **Determination of damages**

Laera requests total damages of $790,194.30 for the product mark-ups and Fang's salary overpayments.  Laera offers sufficient evidence both through affidavits and invoices to demonstrate his entitlement to the $759,794.30 in damages he requests for the product mark-ups.[26]  Laera's affidavit explains how he arrived at this figure with references to the appropriate invoices that show that Fang marked up the prices on the goods that Laera imported from

---

[24] ECF No. 24 at 2.

[25] *See Eitel,* 782 F.2d at 1472.

[26] ECF No. 24 at 5.

China.[27]  I therefore find that Laera is entitled to $759,794.30 in damages for the product mark-ups.

But Laera has not sufficiently proven the damages he requests for Fang's salary overpayments.  To support this calculation, Laera offers the purported declaration of Wei Ting—the employee whose wages Fang allegedly stole—stating that Fang stole $30,400 of his wages.  But Ting's declaration is not properly authenticated because it is not made under penalty of perjury, so I exercise my discretion not to consider it.[28]  Plus, it is not clear that it was Laera—not Ting—who suffered this harm.  Because Laera offers no admissible evidence to support his salary-overpayment damages request, I decline to award him the $30,400 in damages he requests for these alleged overpayments.

**Conclusion**

Accordingly, with good cause appearing and no reason to delay, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that **Laera's motion for default judgment [ECF No. 24] is GRANTED in part and DENIED in part**.  Laera is entitled to $759,794.30 in damages for the product mark-ups, but I decline to award him damages for the salary overpayments.

The Clerk of Court is directed to enter default judgment for Laera and against Fang in the amount of $759,794.30 and CLOSE THIS CASE.

DATED: June 14, 2016

_____
Jennifer A. Dorsey
United States District Judge

---

[27] *See, e.g.*, *U.S. S.E.C. v. Brandonisio*, 2013 WL 5371626 (D. Nev. Sept. 24, 2013); *Trustees of Teamsters Local 631 Sec. Fund for S. Nev. v. Knox Installation-Dismantling and Services,* 2013 WL 4857897 (D. Nev. Sept. 9, 2013).

[28] FED. R. CIV. PROC. 56